No.——

First Circuit

---

BAUGH v. SCOTLAND LUMBER CO.

---

(December 7, 1926. Opinion and Decree.)
(January 7, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 160 (j), 160 (l); Appeal—Par. 636.**

   Where the evidence in an Employers' Liability Case, under Act 20 of 1914, is evenly divided the conclusion of the trial judge will be accepted as correct.

2. **Louisiana Digest—Master and Servant —Par. 158.**

   A minor employed as a slabman in a lumber mill is in the course of his employment within the meaning of the Workmen's Compensation Law, Act 20 of 1914, as amended, when he helps replace a belt which had slipped from a pulley, the evidence being conflicting as to whether he was forbidden to "fool with the belt".

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from the Parish of Pointe Coupee. Hon. ——————, Judge.

Action by Everett N. Baugh against Scotland Lumber Co.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Claiborne & Claiborne, J. H. Morrison, of Baton Rouge, attorneys for plaintiff, appellee.

Albin Provosty, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. William Baugh lost an arm while engaged as an employee of defendant company. This suit is brought by his father, the plaintiff, for compensation, under the Employers' Liability Act, his son being a minor. The sole question presented for decision is as to whether or not William Baugh was, at the time of the accident, engaged in the performance of services arising out of or incidental to his employment. The district judge rendered judgment resolving this question in favor of plaintiff, from which defendant prosecutes this appeal.

William Baugh was employed as a slabman by defendant company. He was stationed upstairs in defendant's mill where he was required to catch slabs from rollers and to throw them in a conveyor, by which they were carried to a dumping place. The conveyor was operated by a belt which was located downstairs in the mill. The conveyor suddenly stopped and William Baugh went downstairs to see what was the cause of the trouble. The belt had slipped from the pulley and the conveyor had ceased

to operate. Baugh, in attempting to replace the belt, got on the wrong side, was caught by the belt, which resulted in the tearing up of his arm between the elbow and shoulder.

A millwright, with a helper, was stationed downstairs, and as the evidence shows it was a part of their duties to replace the belt when it happened to slip off from the pulley. Baugh, the injured boy, testified that Woody, the mill foreman, instructed him about three days after he was employed to go down and help put on the belt when it came off the pulley. Chaisson, a former wheelwright at the mill, testifies he was present when Woody gave these instructions to Baugh. Woody denies that he gave any such instructions and claims that, on the contrary, he warned Baugh that he should not "fool with the belt", meaning, as he explains, that he was instructed not to try to put on that belt. Pittman, helper of the wheelwright, who was assisting Baugh to put on the belt when he was hurt, testifies that he heard Woody when he instructed Baugh not to "fool with the belt". Callahan, another witness, testifies that he warned Baugh not to attempt replacing the belt when it ran off the pulley. His testimony is of a vacillating character, and rather unsatisfactory. The evidence shows it took two men to put that belt on the pulley when it happened to slip off, which was of quite frequent occurrence. It also appears that the slabman often assisted the wheelwright or his helper to put it on. This was particularly in line with the duties of the slabman, as was explained by McDonald, a former manager of the defendant's mill. As a matter of fact, the record shows that not only slabmen but others working in the mill often assisted in replacing this belt. It does not appear that as a rule the slabmen were directed not to attempt to put

the belt on the pulley. Woody says that he so warned Baugh, because he was young and inexperienced. The evidence shows that others nearly as young and quite as inexperienced were permitted to assist in replacing this belt. It is not shown that they undertook to do this under the instructions of Woody, but as it does not appear that they were advised against it or that any protest was made, it is but fair to presume such action met with the approval of the mill foreman or was acquiesced in by the management. With this practice, if not custom, prevailing at the mill, which was in keeping with the work of the slabmen as explained by the former manager, McDonald, it is reasonable to believe that Woody could have given instructions to Baugh to assist the wheelwright or his helper when necessary to replace the belt, particularly as he would very likely be the first man to notice the effect of the slipping off of the belt from the pulley. With evidence of this character before him, we do not think that the district judge erred in believing the testimony of Baugh and Chaisson to the effect that Woody instructed the former to assist in putting the belt on the pulley when his services were needed for that purpose. If we leave out of consideration the facts and circumstances of the case which we find are favorable to the version given by Baugh and Chaisson, the solution of the issue would have to depend entirely on the veracity of the witnesses who testified herein. In such cases, and where the evidence is evenly divided as it is here, the conclusion of the trial judge will be accepted. Scott vs. Dounson, 148 La. 307, 86 South. 821; Cloud vs. Warner, 157 La. 14, 101 South. 794.

The district judge found that plaintiff's minor son was acting within the scope of his employment when he was injured. We

find that the judge is supported in this conclusion by the evidence, which being, however, at least sharply conflicting and about evenly balanced, would not justify a reversal.

Affirmed.